WHEELER (HARRIS v.). See Case No. 6,-129.

## Case No. 17,496.

### WHEELER v. HELMBOLD et al.

[5 Blatchf. 503.] [1]

Circuit Court, S. D. New York. Nov. 11, 1867.

CONSTRUCTION OF CONTRACTS — TENDER OF PERFORMANCE—EQUITY JURISDICTION.

1. In an agreement between H. and W., it was provided: (1) That W. should have the option of taking 1,875 shares of stock, in a certain company, and certain presses, on the following terms and conditions, namely, the payment of $3,000 in 30 days, $1,000 in 60 days, $1,000 in 90 days, $7,000 in 9 months and $3,000 in 12 months; (2) that, on the payment of $3,000, a cotton compress was to be delivered to W., and, on the payment of $150, in addition, a plantation press was to be delivered to him; (3) that, on payment of any sum of $1,000, or upwards, a pro rata amount of the whole of the stock proposed to be delivered to W. by the contract, and a pro rata amount of 2,500 other shares of stock in the same company, owned by W., but held by H. as collateral security, should be delivered to W., as rapidly as such payments were made. Held, that W. had the option, under the agreement, to pay, at any time within the times and amounts limited, the sum of $1,000, and receive the proportion of stock thereto belonging, and that, on the tender of any such $1,000, the pro rata pro-

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

portion of shares belonging to it became, in equity, the property of W. *Held*, also, that the refusal by H. to accept a tender when made, did not confer on W. a right to any more shares than the pro rata proportion represented by the sum tendered. and that, as to all sums not tendered within the times limited by the agreement, W. forfeited his option in regard to the pro rata portion of shares represented by such sums.

2. A claim by W. against H., for damages for delaying to assign a patent, under an agreement to assign it, and for discouraging parties from buying the patented machines, *held*, not to be a subject for affirmative relief in equity, in this suit, or for equitable set-off, in this suit, against any sum due by W. to H.

In equity. This was a motion for a provisional injunction, founded on a bill, and opposed by the defendants, on an affidavit made by the defendant Helmbold. On the 14th of September, 1866, the plaintiff, being the owner of three patents for improvements in cotton presses, assigned them to the defendant Helmbold, and, at the same time, entered into a written agreement with him, the material provisions of which were as follows: (1) Helmbold was to pay down to Wheeler $7,500, and advance such further sums as should be necessary to carry on the business of making machines under the patents; (2) the two parties were to share equally all profits from the business and the patents, except that the whole net profits were to belong exclusively to Helmbold, till they should amount to $15,000 and, after that, 50 per cent. of all further profits ·was to be appropriated to reimburse Helmbold for any advances of his, until he should be wholly repaid, and the remaining 50 per cent. was to be divided equally between the parties, and, after such advances were repaid, all profits were to be divided equally between the parties. On the 3d of October, 1866, Wheeler and Helmbold and one Baldwin formed a corporation, under the laws of New York, called "The Champion Press Company," for the business of making and selling machines under the patents. The stock of the company was 5,000 shares, of $100 each. The whole of it was to be issued to Helmbold, in the first instance, in payment for the patents, which he was to assign to the company. He was then to transfer to Wheeler one-half of the stock, but was to retain the certificates for such one-half, until his advances should be repaid, according to the terms of the agreement of September 14th, 1866. Helmbold made advances to the amount of $7,500, in addition to the $7.500 which he had so paid to Wheeler. Helmbold and Wheeler then, on the 31st of January, 1867, entered into another written agreement. which, after referring to the agreement of September 14th, 1866, recited that Wheeler proposed to take the option of reimbursing to Helmbold all the advances made by him in the business, say $15,000,. and allowing him to retain, in addition, an interest of one-eighth of the stock of the company. and then provided as

follows: (1) Wheeler was to have the option of taking three-eighths of the stock of the company, or $187,500 of stock (which would be 1,875 shares), and also certain presses, on the following terms and conditions, namely, the payment of $3,000 in 30 days from date, $1,000 in 60 days, $1,000 in 90 days, $7,000 in 9 months, and $3,000 in 12 months; (2) on payment of $3,000, the cotton compress was to be delivered to Wheeler, and, on the payment of $150, in addition, the plantation press was to be delivered to him; (3) then followed a provision in regard to which the controversy on this motion arose, and which was verbatim as follows: "It is also understood, that, upon payment of every sum of $1,000 or upwards, a pro rata amount of the whole of the stock proposed to be delivered to said Wheeler, by their contract, and a pro rata amount of the interest of said Wheeler (held by the said Helmbold, as collateral for the return of his advances), shall be delivered to the said Wheeler, as rapidly as the said advances are reimbursed;" (4) the patents were to be assigned to the company, and its organization completed by the election of officers, and the issuing of the stock, which was to be held by Helmbold, as collateral for the return of his advances. On the 15th of March, 1867, the organization of the company was completed, and, on the day following, Helmbold assigned the patents to the company, and the whole of its stock was issued to him. Wheeler paid, or satisfactorily secured, to Helmbold, the payments which, by the agreement of January 31st, 1867, were to be made in thirty days, sixty days, ninety days and twelve months, being in all $8,000 out of the $15,000, leaving unpaid only the $7,000 which was to be paid in nine months. In pursuance of these payments, Helmbold transferred to Wheeler eight-fifteenths of the 1.875 shares, namely, 1,000 shares, and 1,426 shares out of the 2,500 shares in the hands of Helmbold as collateral. On the 22d of March, 1867, Helmbold transferred to the defendant Curtis, as trustee for him, all the stock then standing in his name. On the 25th of October, 1867, Wheeler tendered to the defendants $1,000, and demanded the transfer to him of one-fifteenth part of 4,375 shares being 291 shares. These 291 shares, added to the 2,426 shares. before transferred to Wheeler, would give him 2,717 shares, being a majority of the stock; and the inability of the defendants to vote on these 291 shares would leave under their control only 2,283 shares, and under the control of the plaintiff 2,426 shares. The defendants refused to receive the.$1,000, or to transfer to Wheeler any more stock. . The annual election for trustees of the company was soon to take place. and the controversy was really one as to which of the two parties should have the control of the company. On the 1st of December, 1867. Helmbold served a

notice on Wheeler, of his intention to sell, at public auction, on the 6th of the same month, 1,949 shares of the stock of the company, being the balance of stock in his hands as collateral, and the balance of the 1,875 shares. The bill prayed a decree for the transfer to Wheeler by Curtis of 125 shares of stock, and by Helmbold of 166 shares. It also prayed an injunction, restraining the defendants from disposing of so much of the stock standing in the name of Curtis, and held by him in trust for Helmbold, as to leave standing in his name less than 875 shares, or of any of the stock deposited in the hands of Helmbold, and, also, restraining Curtis from voting upon any of the 875 shares.

Clarence A. Seward and John L. Ward, for plaintiff.

Elbert E. Anderson, for defendants.

BLATCHFORD, District Judge. The whole controversy turns upon the construction of the clause in the agreement of January 31st, 1867, which relates to the payment of sums of one thousand dollars and upwards. The plaintiff contends that he has a right, under the agreement, to make, at any time within the times limited by the agreement, a payment of $1,000 or upwards, and receive the proper proportion of stock applicable to such payment, and that he can exercise his option, within the times limited by the agreement, to such an amount, in sums of at least $1,000, within the sums specified therein, as he chooses, without being bound to pay the entire sums specified; as, for instance, that, having paid the first $5,000, he can, within nine months from the date of the agreement, pay $1,000 more, without being bound to pay $6,000, in addition to such $1,000. The defendants contend, that the option given is to pay as follows: $3,000 in 30 days, $1,000 in 60 days, $1,000 in 90 days, $7,000 in 9 months, and $3,000 in 12 months; that these terms are not varied by the subsequent provision of the agreement; and that the plaintiff has no right to pay the $1,000, without paying the other $6,000, which go to make up the $7,000 payable in 9 months.

It will be seen, that the option given to Wheeler by the agreement, is an option to take the 1,875 shares and the presses, by paying $15,000 in the amounts and within the times specified. If the agreement had stopped there, there would have been no right in Wheeler to receive any part of the 1,875 shares or the presses, until and unless he paid the whole $15,000, and paid it by paying it in the instalments and within the times limited. The parties accordingly go on to provide, that, on the payment of $3,000 of the $15,000, the cotton compress shall be given up, and that, on the payment of $150 more of the $15,000, the plantation press shall be given up. But still there was no provision for any pro rata transfer to Wheeler of the 1,875 shares, or of the 2,500 shares standing in Wheeler's name, but held by Helmbold as collateral. The agreement, therefore, goes on to provide, that, "upon payment of every sum of one thousand (1,000) dollars, or upwards, a pro rata amount of the whole of the stock proposed to be delivered to said Wheeler by this contract, and a pro rata amount of the interest of the said Wheeler (held by the said Helmbold as collateral for the return of his advances) shall be delivered to the said Wheeler as rapidly as the said advances are reimbursed." The defendants contend, that the words, "any sum of one thousand dollars or upwards," mean, any of the sums before specified, being two of $1,000 each, two of $3,000 each, and one of $7,000, whether such sums are $1,000 or more; and that the provision means that, upon payment of any of the sums above specified, whether $1,000 or more, pro rata amounts of the two parcels of stock shall be delivered to Wheeler as rapidly as such payments shall be made. The plaintiff, on the other hand, contends, that the provision gives him an option to pay, at any time within the times and amounts limited, the sum of $1,000, and receive the proportion of stock thereto belonging. On the construction contended for by the defendants, the tender of the $1,000 within the nine months amounted to nothing, because $6,000 more were not tendered within the same time. On the plaintiff's construction, the tender of the $1,000 within the nine months was sufficient to entitle him to the 291 shares.

Although the question is not free from difficulty, I incline, on the whole, to the interpretation put upon the provision by the plaintiff. On this view, the 125 shares out of the 1,875 shares, and the 166 shares out of the 2,500 shares, which 291 shares are the pro rata proportion belonging to the $1,000 tendered, are, in equity, the property of the plaintiff, and the defendants ought to be enjoined from intermeddling with those 291 shares.

But the plaintiff contends, that the defendants, by refusing the tender of $1,000, and refusing to transfer the 291 shares, have perfected the right of the plaintiff to the rest of the 1,875 shares and of the 2,500 shares, without the payment by the plaintiff of any more of the $7,000 which was to be paid in nine months. I cannot concur in this view The whole agreement is one giving an option to the plaintiff to have the 1,875 shares, and the 2,500 shares, delivered to him, by making the payments specified within the times prescribed. Before he made the tender of $1,000 he had paid and arranged the payments that were to be made within the thirty days, the sixty days, the ninety days, and the twelve months, but he had paid nothing toward the $7,000 additional that was to be paid within nine months; and, even though he had, as is held, the right to pay within the nine months only $1,000 of that $7,000, unless he chose to pay more of it, yet he had a right to forfeit his option as to the $6,000, if he chose to forfeit it. This he has done. He has allowed

the nine months to expire without paying more than $1,000 of the $7,000. He could have tendered the whole of the $7,000 and become entitled to the entire residue of the 1,875 shares, and of the 2,500 shares. But he has elected not to do so. The refusal by the defendants to receive the $1,000 and to transfer the 291 shares, can confer upon the plaintiff no greater rights, as respects the remaining 1,658 shares, than the agreement gives him. By the agreement he must pay $6,000 to secure a right to the 1,658 shares. By tendering the $1,000, he acquired a right in the 291 shares only, and none in any part of the 1,658 shares.

The defendants, therefore, have a right to regard the agreement of January 31st, 1867, as at an end, so far as any option on the part of the plaintiff in respect to the 1,658 shares is concerned. It has expired, in regard to those shares, by its own limitation. The defendants have, therefore, a right to deal with 750 shares, and no more, out of the 1,875 shares, as their own, without reference to any rights of the plaintiff therein; and the defendant Helmbold has a right to hold and treat 908 shares, and no more, of the stock standing in Wheeler's name, as being pledged as collateral to the indebtedness of Wheeler to him, and to exercise, in regard to it, the usual rights of a holder of collateral security.

In regard to the 750 shares, no ground for the equitable interference of this court is alleged in the bill, except what grows out of the agreement of January 31st, 1867, and that has been already disposed of.

In regard to the 908 shares, the bill sets up certain acts of the defendant Helmbold in delaying to assign the patents to the company and to complete the organization of the company, and in discouraging parties from buying the patented machines, which acts, it alleges, have caused damage to the plaintiff, and it prays that the amount of this damage may be assessed and set off against the $6,000 which still remains unpaid of the $15,000, and that the amount of stock represented by the amount of such damage be transferred to the plaintiff in like manner as if he had paid to Helmbold in money an amount equal to such damage, and that the surplus of such damage beyond the $6,000 be paid by Helmbold to the plaintiff. On all these facts, the bill prays a permanent injunction restraining the defendants from transferring to any other person than the plaintiff, without his consent, any of the stock of the plaintiff so deposited in the hands of Helmbold. In regard to this alleged damage to the plaintiff, it is sufficient to say, that, if the facts are as stated by the plaintiff, he has a plain, adequate and complete remedy at law therefor, by a direct action against Helmbold, if he has any cause of action growing out of the alleged acts of Helmbold. The damage set up is not a subject for affirmative relief in equity, in this suit, nor is it a subject for equitable set-off, in this suit, against any amount which the plaintiff owes to Helmbold. Helmbold's right of action against the plaintiff does not grow out of the agreement of January 31st, 1867, but out of an indebtedness of the plaintiff to Helmbold, otherwise created. Helmbold cannot sue the plaintiff, on that agreement, for any of the sums specified therein, for, the effect of the agreement is merely to give the plaintiff an option, and to bind the defendant to transfer stock on the exercise of such option. But Helmbold cannot compel the plaintiff to exercise the option or sue him on the agreement for not exercising the option. Therefore, so far as the damage referred to can be set off, in any suit, against what the plaintiff owes Helmbold, it must be so set off in a suit brought by Helmbold against the plaintiff. The damage does not grow out of the agreement of January 31st, 1867, which is the sole proper subject of any equitable jurisdiction in this suit.

I think, therefore, that the plaintiff is entitled to a provisional injunction restraining the defendants from selling, assigning, transferring, disposing of, pledging, or encumbering, in any way, to, or in favor of, or for the benefit of, any other person than the plaintiff, so much of the stock now standing in the name of the defendant Curtis, on the books of the company, and held by him in trust for the defendant Helmbold, as to leave standing in his name, on the books, in trust, as a stockholder, less than one hundred and twenty-five shares, or, at its par value, twelve thousand five hundred dollars' worth of the stock, or any more than nine hundred and eight shares of the stock of the plaintiff deposited, and still remaining, in the hands of the defendant Helmbold as collateral security. In regard to these 908 shares, no ground for equitable relief is shown by the bill, and it does not appear that Helmbold is about to exercise in regard to them any other rights than those which, as a holder of them as collateral security for a debt due to him, he is entitled to exercise. The injunction will also restrain the defendants from voting, either in person or by proxy, at any meeting or meetings of the stockholders of the company, upon all or any of the two hundred and ninety-one shares. An injunction will accordingly issue to the extent above prescribed, and, in all other respects, the injunction asked for is refused.